UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 08-61-JBC

MARY K. JOHNSON,                                                                    PLAINTIFF,

V.                         **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                     DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income (R. 9, 10).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. Overview of the Process**

Judicial review of the Administrative Law Judge's ("ALJ") decision to deny Supplemental Security Income is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

At the time of the alleged onset of disability, the plaintiff was a forty-six-year-old female with a tenth-grade education. AR 14, 267. She alleges disability

2

beginning on September 22, 2004, due to multiple impairments. The plaintiff filed an application for Supplemental Security Income on October 5, 2004, which was denied initially on February 3, 2005 and again upon reconsideration on June 2, 2005. AR 14. After a hearing held on September 6, 2006, the ALJ, Roger L. Reynolds, determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 14. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 16. At Step 2, the ALJ found that the plaintiff had the following severe impairments: coronary artery disease status-post coronary artery triple bypass surgery, non-insulin dependent diabetes mellitus, and chronic anemia secondary to menorrhagia, now status-post hysterectomy. AR 16. The ALJ then determined that the plaintiff did not have an impairment or combination of impairments that met or equaled a listing in the Listing of Impairments at Step 3. AR 17. To assess the plaintiff's claim at Step 4 and 5, the ALJ found that the plaintiff had the residual functional capacity ("RFC") to lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; stand or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. AR 17. The ALJ determined at Step 4 that the plaintiff could perform her past relevant work as a child care attendant, as well as thousands of other jobs existing in the state and national economies. AR 19. The ALJ therefore did not reach Step 5 and denied the plaintiff's claim for Supplement Security Income. AR 18, 19. The Appeals Council denied the plaintiff's request for review on January 23, 2008, and she

commenced this action.  AR 5.

### III. Legal Analysis

The plaintiff claims that the ALJ's decision was not supported by substantial evidence.  Specifically, the plaintiff argues that the ALJ erred in not properly considering the plaintiff's cardiac stress test.  The plaintiff next argues that the ALJ erred in finding that the plaintiff did not suffer from significant functional limitations because she failed to see her treating physician for fourteen months in Step 5.  The court will consider each argument in turn.

**A.  The ALJ's Determination is Supported by Substantial Evidence.**

The plaintiff maintains that the ALJ wrongly concluded that the plaintiff had stable coronary artery disease.  The plaintiff argues that the ALJ erred in rejecting the cardiac stress test of October 15, 2005.  She maintains that the stress test shows that her coronary condition meets the definition of "ischemic heart disease," the disability listed in 20 C.F.R. pt. 404, subpt. P, App. 1 § 4.04. She also argues that the ALJ should have considered the stress test when assessing the credibility of her allegations of disability.  The plaintiff further contends that the ALJ erred in failing to address the stress test because the ALJ adopted the findings of Dr. Wangjian Zhong, who did not administer another stress test and noted that the plaintiff would benefit from having "a repeated ECHO study to evaluate her cardiac function."  AR 257.

Contrary to the plaintiff's allegations, the ALJ specifically considered whether the plaintiff's condition met the requirements of "ischemic heart disease" listed in section 4.04 and determined that she did not meet its requirements because "the medical record does not reflect chronic chest discomfort after the claimant's bypass surgery." AR 17. The ALJ is correct that chest discomfort is an aspect of the listed impairment. *See* 20 C.F.R. 404, Subpart P, App. 1, §4.04. The plaintiff bears the burden of showing that she meets all of the elements of the listed impairment. *See Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1986) (claimant does not meet burden by almost establishing disability); *Hale v. Sec'y of Health and Human Services,* 816 F.2d 1078 (6th Cir. 1987)("lack of evidence indicating the existence of all the requirements of [an appendix listing] provides substantial evidence to support the Secretary's finding that the claimant did not meet the Listing" (citing *King v. Heckler,* 742 F.2d 968 (6th Cir. 1984)). The plaintiff has not met her burden, and substantial evidence supports the ALJ's assessment of her disability, including the ALJ's determination that the objective findings of her medical record did not support the plaintiff's subjective complaints of pain. *See* AR 18.

In a December 6, 2004, follow-up treatment note, the plaintiff's treating physician, Dr. Ananth Kumar, considered the plaintiff's coronary artery disease "stable." AR 185. Additionally, Dr. Kumar noted, "She's not had any pains on activity and is able to do most of her activities." AR 184. Most significantly, the plaintiff saw Dr. Kumar in 2006, several months after the October 14, 2005, test.

In January of 2006, Dr. Kumar reported that an EKG showed "normal sinus rhythm, voltage greater LVH, no ST segment changes suggestive of ischemia." AR 246. He further noted that the plaintiff's "chest pains on the left side . . . is [sic] relieved by both antacid as well as by rest." *Id.* On February 27, 2006, the doctor described the plaintiff's symptoms as "totally noncardiac" and again described her coronary artery disease as "stable." AR 244. Furthermore, Dr. Kumar addressed the stress test: "The patient has cleared a stress test in one year after the [coronary artery bypass graft], would not expect any further trouble with respect to [coronary artery disease] in the near future. This was explained to her, if she controls her risk factors well." AR 244. Importantly, Dr. Kumar specifically added: "No evidence for inducible ischemia on perfusion images during treadmill stress," AR 250, and he cleared her for the hysterectomy, a major surgery. *Id.*

The ALJ cited and relied upon Dr. Kumar's reports from the plaintiff's January and February 2006 examinations. *See* AR 16, 17. The existence of the October 15, 2005, stress test alone does not overcome the findings presented in these reports. Therefore, the plaintiff's arguments that the October 2005 test results mean that she meets the criteria of Listing 4.04 and that the ALJ improperly assessed her credibility fail.

Furthermore, the ALJ did not err in adopting the findings of Dr. Zhong, despite his assessment that the plaintiff would benefit from "a repeated ECHO study to evaluate her cardiac function." TR 257. The ALJ "granted the most probative weight to the medical source statement of W. Zhong, M.D." AR 18. The

ALJ found Dr. Zhong's report to be well-documented and well-reasoned. AR 18. Dr. Zhong's notes support the ALJ's assessment. Although Dr. Zhong stated an echocardiogram would be of benefit, he considered the plaintiff's relevant medical history when making his assessment and performed a physical exam on the plaintiff. AR 256. As noted by the ALJ, Dr. Zhong provided the most restrictive assessment of the plaintiff's functional capacity. Dr. Zhong found that the plaintiff had the ability to perform "light work"[1] requiring no more than occasional climbing, crouching, crawling and stooping.[2] AR 258-59. He also reported that "extremity muscle strength is 5/5," that she ambulated with a normal gait, possessed intact sensation and reflexes, and displayed only "mildly" limited ranges of motion in her shoulders, hips, and lumbar spine. *See* AR 256. The state reviewing physicians, on the contrary, found that the plaintiff could perform "medium work." *See* AR 196-99, 235-38. However, the ALJ decided to adopt Dr. Zhong's assessment because he had performed an in-person examination of the plaintiff, and the ALJ

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. Section 416.967(c)(2008). Other than finding that the plaintiff could lift no more than fifty pounds occasionally and twenty-five pounds frequently, the state reviewing physician assessed the plaintiff as having no limitations to her physical abilities. *See* AR 196-99.

wanted to make an effort to give the plaintiff "the benefit of the doubt." AR 18. As "medium work" is more strenuous than "light work," those reports support the ALJ's assessment that the plaintiff was at least able to perform "light work." Dr. Zhong's statement that another echcardiogram would be beneficial does not render his assessment unsupported, given the documentation that he provided and the supporting opinions of the other doctors. Furthermore, Dr. Zhong was not a treating physician, and no other reviewing doctor suggested additional testing.

**B. The ALJ did not err in assessing the plaintiff's subjective complaints**

The plaintiff contends that the ALJ erred in finding that she did not suffer from significant functional limitations because she failed to see her treating physician for fourteen months. The plaintiff rightly states that an ALJ cannot reject a claimant's subjective complaints for failure to seek treatment without first determining whether that failure is due to an inability to afford treatment. *See* SSR 96-7p.

However, the ALJ did not rely exclusively on the plaintiff's infrequent visits to her treating physician in making his determination. The ALJ noted that the plaintiff's "substantial improvement" post surgery was well-documented. AR 18. The ALJ found that the medical record shows the plaintiff reported substantial improvement only three months after her surgery and that when she visited her treating physician again fourteen months later her only complaint was resolved with antacids. AR 18. The ALJ reasoned that the plaintiff's "lapse between doctor's


visits" coupled with her "paucity of complaints" when she saw her doctor supported his finding of "few significant functional limitations." AR 18.   The ALJ's finding was based on the record as a whole rather than merely on the infrequency of the plaintiff's visits to her treating physician.   As discussed above, the record as a whole provides substantial evidence for the ALJ's assessment of disability.

In summary, the ALJ's determination that the plaintiff had stable coronary artery disease at Step 3, and his finding that the plaintiff had no significant functional limitations at Step 4, were based on substantial evidence taking into consideration the record as a whole.   Therefore, the court will not disturb it.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (R. 10) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (R. 9) is **DENIED**.

Signed on  February 9, 2009



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY